IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

REGINALD J. BOUIE, JR.,
      Petitioner,

v.                               Case No.  3:10cv199/LC/CJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,
      Respondent.

_____

## REPORT AND RECOMMENDATION

Before the Court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 4).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 21).  Petitioner replied.  (Doc. 29).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On January 28, 2003, petitioner was charged in Escambia County Circuit Court Case Number 03-277, with robbery with a weapon.  (Doc. 21, Ex. C).[1]  On April 8, 2003, the State filed a notice of its intent to seek one or more of the following enhancements to petitioner's sentence:  Habitual Felony Offender ("HFO"), Habitual Violent Felony Offender ("HVFO"), and/or Prison Releasee Reoffender ("PRR").  (Ex. D).  The State filed an amended information on June 19, 2003, charging petitioner with robbery with a weapon and while wearing a mask.  (Ex. E).  On February 15, 2005, the State filed a "Notice of Defendant's Qualification as a Prison Releasee Reoffender."  (Ex. G).  Petitioner entered into a counseled written plea agreement on April 25, 2005, whereby petitioner pleaded no contest "straight up" as charged, with the understanding that the State would request that petitioner "be sentenced to 30 years state prison as a Prison Releasee Reoffender or pursuant to any other applicable enhancement."  (Ex. H, p. 2; Ex. HH).  A plea hearing was held on April 25, 2005.  (Ex. H).  Defense counsel advised the court of the plea agreement and that the defense would be arguing that the enhancement statutes did not apply to petitioner.  (*Id.*, p. 2).  The trial court conducted a plea colloquy, found that petitioner's plea was voluntary and intelligent, accepted petitioner's plea, withheld adjudication of guilt, and deferred sentencing to allow petitioner to contest the applicability of the PRR statute.  (*Id.*, pp. 9-10).

On June 22, 2005, defense counsel filed a sentencing memorandum stating grounds why the PRR statute was inapplicable to petitioner's case, namely:  (1) the one prior felony for which petitioner was convicted was Possession of Cocaine, (2)

---

[1]Hereafter, all references to exhibits are to those provided at Doc. 21, unless otherwise noted.

petitioner's prior offense was treated as a Youthful Offender sentence, and (3) the PRR statute violated petitioner's procedural due process rights by using a nonspecific possession charge to be invoked as a predicate offence and "qualifying event." (Ex. I). The State filed notices of petitioner's prior judgment of conviction and last date of release from the Department of Corrections. (Exs. J, K). At proceedings held September 29, 2005, petitioner made an *ore tenus* motion to withdraw his plea. (Ex. L). The trial court denied the motion on January 18, 2006, and found that petitioner "legally and factually qualifies for the imposition of PRR sanctions." (Ex. M). Defense counsel requested and was granted leave to review the record on which the court relied in denying petitioner's motion to withdraw plea. (Ex. N). At proceedings held on February 6, 2006, petitioner acknowledged no discrepancies in the record of the plea proceedings, but announced his intent to appeal the denial of his motion to withdraw plea. (Ex. O). The trial court stayed further proceedings pending appeal. (*Id.*). Petitioner filed a notice of appeal to the Florida First District Court of Appeal ("First DCA"), but later voluntarily dismissed the appeal. (Exs. P, Q). Petitioner's appeal was dismissed on May 3, 2006. (Ex. Q).

During the pendency of appellate proceedings, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. R). On February 28, 2006, the trial court dismissed the motion without prejudice for lack of jurisdiction. (*Id.*). Petitioner filed another *pro se* Rule 3.850 motion on April 13, 2006, which was stricken by the court on May 16, 2006, as a nullity, because petitioner was represented by counsel at the time of its filing. (Ex. S). Petitioner filed yet another *pro se* Rule 3.850 motion on May 24, 2006. (Ex. T). The record does not reflect an order disposing of that motion.

On July 13, 2006, petitioner was adjudicated guilty of robbery with a weapon and while wearing a mask, and was sentenced as a PRR to thirty years in state prison. (Ex. U). Judgment was rendered that day. (Ex. V). Petitioner appealed. (Ex. W). While the appeal was pending petitioner filed a motion to correct sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2). (Ex. X). Petitioner argued that his sentence required correction because the PRR statute required the State to prove that petitioner committed the predicate offense within three years of release from the DOC, and petitioner was sentenced as a PRR without the benefit of a hearing and without the State proving petitioner's qualification. (*Id.*). The trial court held a hearing on April 19, 2007, received evidence from the State that petitioner qualified as a PRR, found that the State met its burden of proof, designated petitioner a PRR and re-sentenced petitioner to thirty years in state prison. (Exs. Y, Z). Petitioner appealed, and appellate counsel filed an *Anders*[2] brief. (Ex. BB). Defense counsel sought, and petitioner was granted leave, to file a *pro se* brief. (Ex. CC). Petitioner did not file a *pro se* brief. The First DCA per curiam affirmed petitioner's conviction and sentence without written opinion on December 21, 2007. *Bouie v. State*, 971 So.2d 119 (Fla. 1st DCA 2007) (Table) (copy at Ex. DD).

On September 23, 2008, petitioner filed another Rule 3.850 motion. (Ex. EE). The trial court granted a limited evidentiary hearing on one claim – that defense counsel was ineffective for advising petitioner not to accept a prior plea offer from the State. (Ex. FF). After an evidentiary hearing held on May 22, 2009, (ex. GG), the trial court denied relief on all claims (ex. II). Petitioner appealed. (Ex. JJ). Petitioner's initial brief addressed the trial court's denial of only two of the four

---

[2]*Anders v. State of Cal.*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

grounds raised in petitioner's postconviction motion.  (Ex. KK).  On February 25, 2010, the First DCA per curiam affirmed without written opinion.  *Bouie v. State*, 31 So.3d 179 (Fla. 1st DCA 2010) (Table) (copy at Ex. MM).  The mandate issued April 16, 2010.  (*Id*.).

Petitioner filed his original federal habeas petition in this Court on June 4, 2010, (doc. 1), which he later amended (doc. 4).  Petitioner's amended petition presents three grounds for relief:  (1) the state court's denial of relief on petitioner's claim that counsel was ineffective for failing to advise petitioner to accept an earlier plea offer from the State was contrary to, or an unreasonable application of clearly established federal law, (2) the state court's denial of relief on petitioner's claim that counsel was ineffective for failing to investigate petitioner's case and failing to provide accurate advice regarding petitioner's qualification as a PRR prior to advising petitioner to plead no contest was contrary to, or an unreasonable application of clearly established federal law and (3) the state court's summary denial of petitioner's claim that counsel was ineffective for failing to "follow through" with a defense motion to suppress was contrary to, or an unreasonable application of clearly established federal law.  (Doc. 4).  Respondent asserts that Grounds One and Two fail on the merits, and that Ground Three is procedurally defaulted.  (Doc. 21).

## LEGAL STANDARDS

### Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal

court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal

district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).   In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

A federal court's review under § 2254(d) presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).   The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a

federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

A federal habeas court takes the final step of conducting an independent review of the merits of the petitioner's claims only if the court finds that the petitioner satisfied AEDPA and § 2254(d).  *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C.

§ 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.

A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

　　(A)  the applicant has exhausted the remedies available in the courts of the State; or

　　(B) (i)  there is an absence of available State corrective process; or

　　　(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

never presented to the state courts).  To overcome a procedural default, the petitioner must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. at 497, 111 S. Ct. at 1472 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

## DISCUSSION

Ground One            The state court's denial of relief on petitioner's claim that counsel was ineffective for failing to advise petitioner to accept an earlier plea offer from the State, was contrary to, or an unreasonable application of clearly established federal law.  (Doc. 4, pp. 1-10).

Petitioner asserts that prior to entering his no contest plea on April 25, 2005,

he had the opportunity in January of 2005, to accept a plea offer from the State whereby petitioner would plead "straight up" without PRR sanctions. (Doc. 4, Grounds for Relief, p. 1). Petitioner asserts that counsel "failed to explain [the alleged plea offer] to him in detail, but just advised him that he should not accept the deal because there was no cap set at that time." (*Id*., p. 2). The parties agree that petitioner presented this claim in his Rule 3.850 proceeding as "Issue III," that the state court denied relief after an evidentiary hearing, that petitioner argued the issue in his postconviction appeal, and that the appellate court affirmed the denial of relief without written opinion. (Doc. 21, pp. 12-13). Respondent argues that petitioner is not entitled to federal habeas relief, because the state court's decision was not contrary to clearly established federal law, was not an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. (*Id*., pp. 14-16). Petitioner concedes in his reply that respondent is correct, and that he is not entitled to federal habeas relief on Ground One. (Doc. 29, p. 1 ("As to ground one of the petitioner's amended petition for habeas corpus, petitioner concedes that respondent's arguments are well-taken. Accordingly, petitioner will not press the arguments made in ground one of his amended petition for writ of habeas corpus.")). This Court should deny federal habeas relief on Ground One based on petitioner's affirmative abandonment of the claim, and because the claim is without merit.

   A.   Clearly Established Federal Law

   "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404,

— L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L. Ed. 2d 203 (1985), the Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id*. at 58, 106 S.Ct. 366 (*citing Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  *Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S., at 57, 106 S. Ct. 366 (*quoting Strickland*, 466 U.S. at 688, 104 S. Ct. 2052)).  *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. 366.

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.    Federal Review of State Court Decision

Petitioner alleged in state court, as he does here, that prior to the State serving its notice of intent to seek an enhanced sentence, the State made an offer to petitioner that petitioner could "plead straight up to the court," but defense counsel advised petitioner to reject the offer.  Petitioner alleges that because the PRR enhancement had not yet come into play, the maximum sentence petitioner could have received at that time was less than the thirty years he ultimately received after waiting and pleading straight up to the court after the State noticed its intent to seek a PRR enhancement.  (Doc. 4, pp. 1-10; *see also* Exs. EE and GG).  The state court held an evidentiary hearing on this claim.  (Ex. GG).  Petitioner testified that on January 20, 2005, defense counsel James Sewell told petitioner he had received a plea offer from prosecutor Alicia McDonald for petitioner to plead straight up to the court.  (*Id*., p. 7).  Petitioner testified that Mr. Sewell showed him the offer, "but he didn't explain to me . . . in detail, what the offer was.  He just advised me that I shouldn't accept the deal because there wasn't no caps at that time.  And at the time, he could get me a four year deal."  (*Id*.).  Petitioner testified that he eventually pled straight up to the court, but because it was after the State noticed its intent to see an enhanced sentence, petitioner's sentence exposure (and actual sentence) increased to a 30-year minimum mandatory sentence.  (*Id*., pp. 7-8).   Petitioner testified that had counsel not advised him to reject the first offer, he would have accepted it and likely been sentenced to less prison time.  (*Id*., p. 8).

Mr. Sewell testified that the first assistant state attorney assigned to petitioner's case was Ryan Ross.  Mr. Ross filed a notice of intent to seek petitioner's enhanced

sentencing as either an HFO, HVFO and/or PRR on or about <u>April 7, 2003</u>.  (*Id*., p.
13).  That same date, Mr. Ross made a written plea offer providing for petitioner to
plead straight up as charged.  (*Id*., p. 17).  Shortly thereafter, Mr. Ross was replaced
by assistant state attorney Alicia McDonald.  (*Id*., p. 15).  Mr. Sewell attempted to
enter into plea negotiations with Ms. McDonald, but was unsuccessful.  (*Id*.).  Mr.
Sewell sent Ms. McDonald an e-mail attempting to settle the case.  (*Id*., p. 16).  Ms.
McDonald's response, dated January 13, 2005, "reflect[ed] her policy, her continuing
position that she would not make an offer in the case other than a plea straight up as
charged."  (*Id*., p. 17).  Ms. McDonald's January 13, 2005 e-mail response attached
the same written offer Mr. Ross made previously (for petitioner to plead straight up
as charged).  (*Id*., pp. 16-17).  Mr. Sewell received Ms. McDonald's notice of
petitioner's qualification as a PRR on February 11, 2005.  (*Id*., p. 14).  Mr. Sewell
was asked if the State ever made an offer of petitioner pleading straight up without
any type of recidivist penalty being imposed, to which Mr. Sewell testified, "No, no."
(*Id*., p. 19).  Mr. Sewell was asked if he ever communicated to petitioner that the State
made an offer that petitioner could plead straight up but avoid a PRR sentence, to
which Mr. Sewell responded, "No," explaining:

> A. [Mr. Sewell]  No, I never indicated to Mr. Bouie that we had an offer
> of that nature.  In fact, the State was seeking that.  And we would argue
> that it was not applicable in his case.
>
> But the State never made any offer or any indication they were not
> going to seek prison releasee reoffender.

(*Id*., p. 19).  Mr. Sewell reiterated later in the hearing:  "[T]here was never any offer
of a set number of years or to drop the State seeking enhancement."  (*Id*., p. 20).
Although Ms. McDonald's January 13, 2005 e-mail to Mr. Sewell stated that she

would talk to the victim about "ten plus years," Ms. McDonald never committed to that sentence or came back with an offer of that nature. (*Id.*, pp. 21, 31). At a January 20, 2005 docket day, Mr. Sewell spoke with Ms. McDonald more than once. The first time, Ms. McDonald said she could not offer ten years or any other determinate sentence, because the victim was adamantly opposed to that, or any other plea offer. (*Id.*, pp. 22, 31-33). The second time Sewell and McDonald spoke, Ms. McDonald maintained her position that petitioner would have to plead straight up with no cap. Mr. Sewell showed petitioner Ms. McDonald's January 13, 2005 e-mail at the January 20, 2005 docket day, explaining:

> A. [Mr. Sewell] . . . Ms. McDonald still saying a plea straight up with no cap. And that's where it stood. And then he [petitioner] could read as I read it to him that she might be able to talk her [the victim] into something, ten pus years.
>
> But that there was no commitment by Ms. McDonald at that time to that sentence or to a sentence of that nature.

(*Id.*, p. 22). Mr. Sewell advised petitioner "that it was not in his best interest at that point to plead straight up with no cap. So I said, I don't think there's no deal on the table so, you know, there's no – we're not getting any kind of tenable offer from the State, and therefore, you know, I didn't recommend a plea straight up." (*Id.*, pp. 22-23). Ms. McDonald came back shortly after the January 20, 2005 docket day and reiterated, "no deals." (*Id.*, p. 27).

Mr. Sewell was asked at the evidentiary hearing whether he ever indicated to petitioner that he would not be subject to prison releasee reoffender sentencing. Mr. Sewell responded:

> A. [Mr. Sewell] No. I never told him that he would not be subject to it. It was our position or I indicated to him that we would contest whether

or not prison releasee reoffender applied to him as well as habitual felony offender or habitual violent felony offender.  But I never indicated to him that he would not be subject to it.

(*Id.*, p. 18; *see also* p. 23).

Mr. Sewell was asked whether he ever indicated to petitioner that petitioner should not plead straight up because he (Mr. Sewell) thought he could get petitioner four years.  (*Id.*, p. 26).  Mr. Sewell responded in the negative:

> THE WITNESS:  No, sir.  My position or what I indicated to Mr. Bouie was that essentially a plea straight up with no cap is really no offer at all.  And that our, if we entered a plea that I would be arguing that a guideline sentence should apply to him and not a prison releasee reoffender sentence.
>
> And we may have discussed that his guideline sentence was in the neighborhood of four years, but I never indicated to him that that's what the judge was going to give him.  If he was found to be prison releasee reoffender, he's subject to mandatory sentencing.

(*Id.*, p. 26).  The Rule 3.850 court asked Mr. Sewell if the State would have been prevented from filing its notice of petitioner's qualification as a PRR if petitioner had pled straight up after the State filed its April 8, 2003 notice of intent to seek enhanced sentencing but before the State filed its February 15, 2005 notice of petitioner's qualification as a PRR.  (*Id.*, p. 28).  Mr. Sewell responded that  it would not have made a difference.  (*Id.*, pp. 28-29).

Following the evidentiary hearing, the state court issued a written order denying relief.  (Ex. II).  The state court identified *Strickland* as the controlling legal standard and denied relief, explaining:

> As pointed out at evidentiary hearing, the State filed notice of the intent to seek enhanced sentencing as early as 2003.  Further, Defendant's trial counsel, Mr. Sewell, testified that the assistant state

attorney at the time, Alishia McDonald, took the "continuing position that she would not make an offer in the case other than a plea straight up as charged." Mr. Sewell also indicated that he never told Defendant that he should not be subject to PRR sentencing, but told him that he would contest whether it properly applied to Defendant. Mr. Sewell stated unequivocally that "the State never made any offer or any indication that they were not going to seek prison releasee reoffender." Defense counsel also testified that he did not tell Defendant that he could get him a four-year sentence, but added that he did tell Defendant that "a plea straight up with no cap is really no offer at all." The Court finds the testimony of counsel to be credible, and finds that no plea offer was made by the State other than an offer to plead "straight up" with the possibility of PRR sanctions. The Court further finds that counsel did not convince Defendant to forego the opportunity to plead by promising him a lesser sentence of four years. Defendant is not entitled to relief on this basis.

(*Id.*, pp. 5-6) (footnotes omitted). The First DCA affirmed without written opinion.

The state court's findings, including its determination that Mr. Sewell's testimony was credible, are presumed correct and are amply supported by the record. Petitioner has not rebutted the state court's findings with clear and convincing evidence to the contrary. Based on the court's findings, it was not unreasonable for the state court to conclude that defense counsel did not perform deficiently during the plea process. Petitioner did not have an opportunity to plead straight up without the possibility of a PRR sentence. Defense counsel's advise during plea negotiations was accurate and reasonable – counsel did not tell petitioner he would not be subject to PRR sentencing, nor did counsel tell petitioner he could get a deal involving a 4-year, 10-year, or any other determinate sentence.

Petitioner further fails to show that he was prejudiced by counsel's advice not to take the January 2005 plea offer. Petitioner was subject to the possibility of a PRR

or other enhanced sentence as early as April of 2003 – far prior to the January 2005 plea discussion. Petitioner has not established there was a reasonable probability he would have received less prison time had he pled straight up in January of 2005, instead of April 2005.

The state court's rejection of petitioner's claim was not contrary to clearly established federal law, was not an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One.

| Ground Two | The state court's  denial of relief on petitioner's claim that counsel was ineffective for failing to investigate petitioner's case and give accurate advice regarding the qualifications as a PRR prior to erroneously advising petitioner to plead no contest, was contrary to, or an unreasonable application of clearly established federal law. (Doc. 4, pp. 10-15). |
|---|---|

Petitioner next asserts that trial counsel rendered ineffective assistance by failing to investigate and give accurate advice concerning petitioner's qualification for sentencing as a prison releasee reoffender. Counsel's alleged erroneous advice was that petitioner did not qualify as a PRR "because his prior record consisted of only one felony conviction possession of cocaine and where he was sentenced and treated as a youthful offender." (Doc. 4, p. 10). The parties agree that petitioner presented this claim in his Rule 3.850 proceeding as "Issue I," that the state court denied relief, that petitioner argued the issue in his postconviction appeal, and that the appellate court affirmed the denial of relief without written opinion. (Doc. 21, pp. 16-18).

A.   Clearly Established Federal Law

The clearly established federal law governing ineffective assistance claims

arising in the plea context is set forth above.

       B.     Federal Review of State Court Decision

     Petitioner asserts that defense counsel affirmatively misadvised him that he did not qualify as a PRR, and that counsel's advice to plead straight up as charged and contest the applicability of the PRR enhancement was unreasonable.  Petitioner alleges that had counsel told him he qualified as a PRR, he would not have entered his plea and would have insisted on going to trial.  (Doc. 4, pp. 10-12).  The Rule 3.850 court denied relief on this claim as follows:

> Defendant asserts that his counsel was deficient for failing to "investigate and give accurate advice" regarding Defendant's qualification as a PRR.  Defendant asserts that his counsel, Mr. James Sewell, erroneously advised him that the State "could not sentence him as a prison releasee reoffender" because his prior record consisted only of one felony conviction for possession of cocaine, for which he was sentenced as a youthful offender.
>
>     Defendant's allegation is refuted by the record.  At the time of Defendant's plea on April 25, 2005, defense counsel enumerated the arguments he intended to present to the Court regarding Defendant's qualification for PRR sentencing.  The Court inquired of Defendant whether he understood that his counsel was going to <u>argue</u> that the PRR statute did not apply to him, but that if the court was "not persuaded by those [arguments and found] that the PRR [did] apply," then the Court would sentence him to 30 years in prison and would have no discretion to do otherwise.  The Court further stated, "I want you to be clear about that because I don't want you to think, you know, if I find that PRR applies to you that there's something else that I can do.  You know, I want you to be certain."  Defendant indicated that he understood.  Therefore, any misadvice on the part of counsel was cured by the plea colloquy, in which the Court made clear that Defendant could potentially receive a PRR sentence of 30 years if the Court found he so qualified.  Defendant is not entitled to relief on this basis.

(Ex. II, pp. 3-4) (footnote omitted).   The First DCA summarily affirmed without written opinion.

The transcript of the plea colloquy amply supports the state court's findings that petitioner knew, at the time he entered his plea, that (1) he might qualify as a PRR despite the fact that counsel was going to argue to the contrary (2) if the court rejected counsel's argument and found that petitioner qualified as a PRR, the court would sentence petitioner to thirty years imprisonment.   At the outset of the April 25, 2005 plea hearing, defense counsel advised the court:

> [W]e'd be entering a plea of no contest, Judge, straight up to the Court. And with the understanding the State's going to request a 30 year sentence and seek to classify him as a prison releasee reoffender or any other applicable enhancement.
>
> We would be asking the Court to consider other options.  And also arguing against the applicability of that enhancement or any other applicable enhancement regarding Mr. Bouie.

(Ex. H, p. 2).   The trial court asked defense counsel, in petitioner's presence,  to state on the record "what explanation you gave to [petitioner] as far as PRR exposure".

(*Id*., p. 3).   Defense counsel communicated the following:

> MR SEWELL:  Judge, I am going to argue – I've explained to him that has [sic] a sentence of in this case, I believe, 30 years.  And that we were going to argue that that is not applicable to Mr. Bouie for various reasons but that the sentencing option, if the Court determines that, is that sentence, 30 years.
>
> Now, we understand, Judge, that I'm going to be arguing the constitutionality as it applies to Mr. Bouie.  And that the Court will be the one to decide whether that sentence applies.
>
> THE COURT:  Did you tell him that what the Court's discretion or lack

of discretion would be if I find that he does qualify for PRR treatment?

MR. SEWELL:  I informed him, Judge, that was a mandatory sentence, that we would be again, Judge, disputing the applicability of that statute, but that that statute is a mandatory sentence.

THE COURT:   And did he appear to understand that when you described it to him?

MR. SEWELL:  Yes, Judge, we discussed the applicability, or excuse, me, the State's request to classify him as such and that the Court would be the one to decide the applicability of that statute in his case.

I would be arguing, Judge, his original – he has one prior prison sentence that was a possession of cocaine.  I would be arguing, number one, his treatment as a youthful offender on that case at the time. Secondly, that the statute, the constitutional grounds, would be inapplicable to him or so – that's where we're at, Judge.

(Ex. H, pp. 3-4).  During the trial court's plea colloquy with petitioner, the following discussion took place concerning petitioner's understanding of the PRR issue:

THE COURT:  . . . You understand that your attorney is entering a plea of no contest for you today on the charges in this case.  This is case 03-0277.  And that your attorney is going to take the position that the prison releasee reoffender statute does not apply in your situation.  And also some other arguments that relates to the constitutionality of it.

And if I find – if I'm not persuaded by those – if I find that the PRR does apply to you, then you understand that the court is going to sentence you to 30 years in the state prison.  That I have no discretion in that.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  I want you to be clear about that because I don't want you to think, you know, if I find that PRR applies to you that there's

something else that I can do.  You know, I want you to be certain. . . .
(Ex. H, pp. 4-5).  The judge went on to question petitioner about his decision to enter
the plea, assuring himself that, among other things:  (1) defense counsel explained
and petitioner understood all the rights petitioner was waiving by entering the plea,
(2) petitioner was satisfied with defense counsel's representation and felt counsel had
done everything petitioner expected him to do, (3) no one told petitioner he had to
enter the plea or used any pressure to get petitioner to enter the plea, and (4) it was
petitioner's own choice to enter the plea and petitioner wanted to enter the plea.  (*Id*.,
pp. 5-7).  In concluding questioning, the trial court asked:  "Understanding that you
have the state prison exposure that I just described to you, are you absolutely certain
without any hesitation or reservation that this is what you want to do?"  (*Id*., pp. 7-8).
Petitioner replied, "Yes, sir."  (*Id*., p. 8).

The state court's findings that petitioner was aware he could be sentenced as
a PRR are further supported by Mr. Sewell's testimony at the Rule 3.850 evidentiary
hearing, wherein counsel stated that he never advised petitioner he did not qualify as
a PRR – counsel told petitioner they would contest the applicability of the PRR
statute but that the court would ultimately decide the issue.  (Ex. GG, pp. 18, 23).
To the extent petitioner suggests counsel's advice to plead straight up with a
challenge to the PRR enhancement was deficient because legal research on the PRR
issue would have revealed counsel's "youthful offender" argument lacked merit, (doc.
4, pp. 12-14; doc. 29, pp. 2-3), petitioner has not shown that no reasonable attorney
would have taken the position counsel took.  Indeed, other defense counsel advanced
the same or similar argument.  *See, e.g., Graham v. State*, 974 So.2d 440, 440-41
(Fla. 2d DCA 2007) (resolving defendant's claim that he should not have been

sentenced as a prison releasee reoffender because his prior commitments were juvenile commitments); *Tatum v. State*, 922 So.2d 1004, 1005 (Fla. 1st DCA 2006) (resolving defendant's claim that he should not have been sentenced as a prison releasee reoffender because his prior commitment was as a youthful offender). It was not until 2006 – after petitioner's plea – that the First DCA issued a published decision rejecting the argument that a defendant could not be sentenced as a PRR when his prior commitment was as a youthful offender. *Tatum, supra* (holding that "[b]ecause the [PRR] statute makes no distinction between youthful offender commitments and adult commitments, . . . the trial court was required to impose the enhanced sentence"). Further, the fact that counsel's argument was ultimately rejected by the trial court in petitioner's case does not suggest that counsel was objectively unreasonable in believing that the argument was viable at the time of counsel's advice.

The state court's rejection of petitioner's claim was not contrary to clearly established federal law, was not an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three    The state court's summary denial of petitioner's claim that counsel was ineffective for failing to "follow through" with a defense motion to suppress, was contrary to, or an unreasonable application of clearly established federal law. (Doc. 4, pp. 15-19).

Petitioner asserts trial counsel was ineffective with regard to a motion to suppress. The parties agree that petitioner presented this ineffective assistance claim in his Rule 3.850 motion as "Issue II". (Doc. 21, p. 10). Respondent asserts that the claim is procedurally defaulted because petitioner failed to argue the issue in his Rule

3.850 appeal.  (*Id.*, pp. 21-22).  Petitioner concedes that respondent is correct.  (Doc. 29, p. 4 ("[P]etitioner concedes that respondent's arguments are well-taken. Accordingly, petitioner will not press the arguments made in ground three of his amended petition for writ of habeas corpus.")).  In light of petitioner's concession and because the record establishes that Ground Three is procedurally defaulted, federal habeas relief should be denied.  *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that federal habeas petitioner procedurally defaulted ineffective assistance claim by failing to properly exhaust it in state court; petitioner received an evidentiary hearing in his Rule 3.850 proceeding and was therefore required under Florida law to argue the issue in his initial brief on appeal from the denial of postconviction relief; petitioner's failure to argue the issue in his initial brief constituted abandonment of the issue under Florida law).

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of

appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the amended petition for writ of habeas corpus (doc. 4), challenging the conviction and sentence in *State of Florida v. Reginald J. Bouie, Jr.* in the Circuit Court for Escambia County, Florida, Case No. 03-277 be DENIED, and that the clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 31st day of July, 2012.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).